If you don't feel by any means compelled to use a photo option, okay, thank you. Please proceed, counsel. Thank you, Your Honor. The case is, uh, Franklin Mutual Insurance Company v. Northwest Aluminum Company. That's right. Good morning. My name is Leonard Feldman, and I'm the counsel for the appellant, Northwest Aluminum. And with me at counsel table today is Jerry Miller, the vice president of general counsel at Golden Northwest Aluminum. I'll try to be brief, as you suggested, and I would like to reserve five minutes for rebuttal. Also, I provided to opposing counsel, and I see that the panel now has before it, some handouts. These are handouts regarding the estoppel issue, which is where I'd like to focus today. That's rather an odd document, a handout. It's like another brief. But it isn't intended to be a brief. In fact, everything in there is already in our briefs. There is no new material. What we've done in these, in the handout that we've provided to you, is to try to assemble so that it's in a simple format, both the structure of my argument today and also the evidence that establishes the estoppel point. If the Court is willing to consider it, that's fine. If the Court does not wish to consider it, that's okay also. As I say, it does present the same evidence. It's a summary of your oral argument. That's right. Okay. Maybe you can give us an oral summary that will be persuasive. And that's exactly where I'm headed. Thank you, Your Honor. We began on this handout, as we do in our reply brief, by noting a point on which both parties agree, and that is that the Oregon Supreme Court has held that evidence in more than just negotiations is sufficient to raise the question of fact regarding whether the plaintiff was lulled into a sense of security that prevented him from filing a suit. The Linden Course also noted that most cases in the estoppel context seem to turn on the question of fact in each particular case. Unfortunately, we have a number of cases that illustrate what kinds of facts tend to establish estoppel. Kimball, Linden, and Mahler are all discussed in our briefs. There are two in our reply brief that we do not focus on, I'd like to mention them. One is Chacho. The insurance company in Chacho requested that its policyholder produce certain business records, and it did it just prior to the expiration of the limitation of suit provision in the policy. In Shea, the insurance company met with the policyholder to discuss adjustment of the claim, and it didn't deny the claim until after the limitation of suit provision had run. Those are both summary judgment cases, as is the Mahler case. And in each of those cases, the Court held that the evidence was sufficient to preclude summary judgment. And, of course, that's exactly what we're asking the Court to do here. Do we have to reach equitable tolling, or is it sufficient to decide the case on equitable estoppel? It is more than sufficient to decide this case on the issue of estoppel. Or to put it the other way, if you decided on equitable tolling, would it be necessary to reach equitable estoppel? No, it wouldn't. Let's get back to my question. Let's get back to your question, Your Honor. We asked for certification on the equitable estoppel point. Equitable tolling. Equitable tolling, sorry. That's the whole problem, you see. Everybody gets them at the computer. That's right. And they are interrelated doctrines, and there's no question about that. But they are separate at the same time. And we asked for that because, at the time, we thought that that was the most expeditious way to resolve this appeal. If we could decide the case on equitable estoppel, why would we bother the Oregon Court with certifying a question? At this point, you wouldn't. We filed the motion because we thought it would avoid the necessity of briefing and oral argument and having this Court dive into the record on the estoppel issue. But, of course, that was over a year ago. But it's your contention that the equitable tolling issue is unsettled under Oregon law. It absolutely is unsettled. There's no question about that. So if we decided on equitable estoppel, we can decide it on a settled basis and wouldn't have to get to it. That's right. Are we precluded from deciding unsettled questions? Are we required to certify? No. It's completely discretionary. And if we decided on equitable estoppel, would that mean that it would go back to the district court to try the question of equitable estoppel? That's right. If we decided on equitable tolling, there would be no issue to try. That's right. And, of course, we'll make the same argument to the district court. If this court were to remand on the equitable estoppel issue, upon remand, of course, we'll ask the district court to avoid the necessity and save the parties the expense of a trial on the issue of estoppel by resolving the case, either, as we pointed out, by resolving the estoppel issue in Northwestern's favor based on the evidence or by addressing the equitable tolling issue. But that's, I suppose, an issue for another day. What I wanted to focus on here today, with the court's permission, of course, is what evidence is there in this record that establishes equitable estoppel. And we begin with, on the second page of our handout, the multiple extensions, including five of those extensions that occurred after the prior extension of the limitation of student provision had expired. And we also see that Factory Mutual, like the defendants in the Liddon and the Shea case, makes an offer of payment to its policyholder. Now, Northwestern didn't accept it, but that doesn't change the fact that the offer was made. Did your client request any of those extensions? Our client requested some of the extensions. At least at some point in time, your client must have thought that it was appropriate to obtain an extension or there might be at risk if they didn't get an extension. The broker, Marsh, was of that view. And as Your Honor points out, that continued through March 15 of 2001. And so on, I think, 9, 10, maybe 11 occasions, Marsh approached Factory Mutual and said, we need an extension. And so the question in this case, of course, is if Marsh and Northwest Aluminum knew that they needed extensions all the way up to March 15 of 2001 and kept asking for it, why didn't they ask for an extension of the March 15 deadline? And that's the estoppel issue in a nutshell. I'm not sure that's helpful to your client. Why didn't they ask for an extension? Because they had been lulled into a sense of security that led them to conclude that their claim would be resolved amicably without filing a lawsuit. And that's what the evidence shows. Perhaps, but it seems to me in a context where the amount being sought by your client seems to escalate dramatically. And I have to confess, the facts are confusing here. And I'm not sure that I have a perfect understanding of who knows what when. But I do recall that your client's figure went from $6 million, which is considered high, to $18 million. Did they really have such confidence that the check was in the mail? They didn't have any confidence that the check was in the mail. What they had confidence in and what they say over and over again is that this was a company that could be trusted, that Factory Mutual had integrity, and that when they said this claim would be adjusted and when they solicited their policyholder to provide a response to their $1 million calculation, that Factory Mutual would wait for that response and would consider it on the merits. And this gets to the issue of the February 28th meeting. And, of course, we know prior to the February 28th meeting from Bill Reed's testimony, that Factory Mutual's approach was that they were there to help us put this claim together. That's what they sold us on, the matter of working together on this claim. And so we go into the February 28th meeting. There's a March 15th deadline. There's been no request for an extension. And what happens? Factory Mutual, according to the testimony of its own witness, Jerry Lonzo, solicited the customer to respond to the technical report that they had prepared. So there is a $6 million claim. It had been prepared in-house by Northwest Aluminum. And two weeks, two weeks before the extension is about to run, Factory Mutual finally responds. And not only is it two weeks before the extension is about to run, but they've now had this report for over a year. So something's going on two weeks before the extension is about to run. And then here we have Jerry Lonzo saying that he solicited the customer to respond. And we know from Mr. Wilcox, the CEO of Northwest Aluminum, that's exactly what happened. He testified that Factory Mutual said, You have got to respond. We know from the notes of the meeting that were taken by Steve Monson with Factory Mutual that they were asking their policyholder to respond. And so they responded. They didn't have an expert at that point in time because, again, their $6 million calculation had been prepared in-house. They needed to respond to several reports and an accounting report that had been prepared by Factory Mutual, which has over 100 years of experience in this area. And that's what they did. And they didn't see that they had a choice. And Jerry, excuse me, Brett Wilcox also testified, and I think in a litigious society like this we ought to applaud him for his testimony, that you don't sue somebody when you're still talking. And we have numerous cases decided. Let me just top you on that then. And I confess, insurance law wasn't my field. With luck, it will never really be my field. The context here is one that's unusual to me. To the extent that I've had any exposure to insurance law, it was not with this expectation or with a doctrine that suggests that you can file prematurely. And I understand from your argument that, in fact, we're in a context where you could be tossed out because it's not established yet that there's a legitimate dispute. Can you confirm for me, or at least lay out for me, what it is that causes the insurance company to pull back as a legal proposition from paying attention to what otherwise would be a limitations deadline that most people would be cautious about? I'm not sure I understand your question. Why wouldn't they file? What's the downside of filing? The downside of filing is that it's premature. Well, that's, I guess, what I need to have explained to me. Is there a legal doctrine somehow that means that if you're premature, you get tossed out on that ground? There is. There's actually two. One is the doctrine of just disability and rightness. And we know that there has to be a current dispute. And what the testimony shows is that it's a March 15. Well, Factory Mutual had denied some of the pot, or disputed some of the pot-like issues. The parties were still talking. There's also case law that addresses this very point. These are some of the equitable, I'll be careful here, the equitable tolling cases. The Christensen case, for example, says if the limitation provision was strictly enforced, an insurer would be forced to file a lawsuit, as the instant case illustrates, simply to secure his or her right to sue, even though a valid right of action might not then exist. The Prudential LMI commercial insurance case from California says exactly the same thing. During this period of time, while the insurer is determining liability in the policy, any suit on the policy filed by the plaintiffs would have been premature. There's also, as I mentioned, another basis, which is the contract itself, the policy. The policy makes very clear in the limitation of suit provision that all policy conditions must be satisfied before filing suit. One of those conditions is to file a proof of loss. Now, the record shows that Factory Mutual did not provide a proof of loss to its policyholder until September of 2001. And so the lawsuit, if it had been filed in March, would have been subject to dismissal on both rightness grounds and for failure to comply with the policy. When I look at the policy language, it does, unless the insured shall have fully complied with all the requirements of this policy, but it goes on, nor unless the same be commenced within 24 months next after inception of the loss. And I would have thought loss is when the injury occurred, when the power outage has caused whatever damage they caused. You're suggesting either that loss has a different meaning or that there is this, and I understand this is where Ervin will appoint, so I'm not really disputing it, but I'm trying to make sure I understand where I'm going, that the estoppel doctrine works so that you don't file, or if you do file too early, you're subject to being tossed out on that ground. But what the estoppel doctrine does is it extends, I suppose, the deadline for filing suit. What it does is the insurance company, as Factory Mutual did here, argues in court, any claim by this policyholder is time-barred. What the estoppel doctrine does is it says you can't make that argument. You are estopped by your conduct from making that argument. And it really has nothing to do with whether the lawsuit would be premature or whether it wouldn't be premature, whether it was ripe or not. It's simply the issue that's raised in the Shea case and the Ciaccio case and the Linn case and Mahler and Kimball. If an insurance company, by its words and by its conduct, leads a policyholder to conclude that the claim will be amicably adjusted without the need to resort to litigation, then it cannot assert the limitation of suit provision as a defense. And here what we have is an insurance company that very carefully, I would say, orchestrated its adjustment of this claim so that on the date that the limitation of suit provision had reportedly run, the policyholder not only had no reason to file suit but thought that the insurance company was its friend, had sold it on the notion of working together, and was waiting for the materials that they had actively solicited. Is this an Oregon doctrine that you insurance companies as their friends? It is not. But that's what the testimony shows, and that's what Mr. Reed's testimony shows. Mr. Reed testified that they had sold them on the notion of working together. Do you have about five minutes, if you want to save a little? I would. All right. Thank you, Your Honor. May it please the Court, Lisa Laird appearing on behalf of Factor Mutual Insurance Company. Can you pull the mic up a little closer to you, please? Thank you. Is that better? Yes, it sure is. I'd like to start off right away with this estoppel issue and whether or not the estoppel analysis can even apply with the kind of factors that Northwest Illumina is claiming here. The first thing that we have to recognize is that Oregon has a unique statute that says insurance companies' efforts to provide forms, negotiate a settlement, do an investigation and all of that cannot be a waiver or an estoppel. Case law from other states that establishes that estoppel based on those kinds of acts is contrary to the Oregon statute and simply does not apply here. We do have the question here about, well, there are several questions here that arise in terms of how we got to where we are. It's important to recognize that what Northwest Illumina did is provide a notice to Factory Mutual early on that they had suffered a loss. Factory Mutual immediately requested information about the loss, a proof of loss, a documentation to support the nature of their claim. Factory Mutual made clear that it would not require the formal form proof of loss. The form that was provided in September of 2001 was given to resolve an issue that had been asked about many times and not resolved, and that is the question whether the Factory Mutual policy or the Allendale policy as it was originally issued was the only policy that covered the loss. Do you agree with Mr. Feldman that there has to be a formal denial of the claim before a suit can be brought? I do not. That would make no sense, really. I mean, if I submit a proof of loss and never hear from the company again, if what Mr. Feldman says is correct, I could never sue. It creates several problems. The first one being if you apply the rule the way they're talking about, several things can happen, which part of it is what happened in this case. They provided a notice that something had happened. Factory Mutual requested information about what happened, provided documentation. The brief refers to several letters and several requests for information and for documentation to back it up. It was not forthcoming. There were many requests, many efforts at meetings, many attempts to try to get the information. Factory Mutual would need to resolve this claim. If Northwest Aluminum's rule would apply, they could simply give notice to the insurance company, take whatever time they want to provide the information and hold the insurance company responsible for the fact that they haven't either formally denied the claim or made a decision about what to do with the claim. Northwest Aluminum complains that in February of 2000, they provided Factory Mutual with the preliminary claim, which was the $6 million claim. It was a two-page sort of summary with some materials attached, and Factory Mutual immediately said, we've got to have documentation to back this up. That, again, was not forthcoming. There were repeated requests for specific types of information, what kind of information would be needed. There were several discussions. Some information came in, but not all the information was needed. After a period of time, Factory Mutual gave up and made an effort to try to resolve, as best it could, the claim as it understood the claim, based on the information it did have. That's what led to the February 28, 2001 meeting. They had gotten their... Well, there was a letter subsequently, I think it was September, that basically said, we don't hear from you in 30 days, we're closing the file. That seemed to be the closest thing I saw to a put up or shut up. And they put up. Now, you didn't like what you heard, but subsequently the insurance company tried to say, well, it's too late based not on when we told you to put up or shut up, but on a date that went by six months before that. And we're really talking about two different kinds of issues here. The first one is the question whether they still had the ability to file a lawsuit under the terms of the insurance policy and the extensions that had been granted. And the second question is whether, even if they could not file a lawsuit, Factory Mutual would have been willing to continue to try to work with them to resolve the claim. There is case law in both Oregon and New York where the suit limitation provision originated that said if there are negotiations and continued efforts by an insurance company after a suit limitations period has expired to try to still resolve a claim, that doesn't waive the suit limitations provision. Every letter that Factory Mutual sent regarding the extensions of time said we are not waiving our rights. And again, the statute provides that you don't waive or be stopped from asserting your rights by simply continuing to negotiate or investigate a claim. Both the broker and Northwest Aluminum's president testified that they understood what the deadline was for, the seriousness of it, what was required. In each instance, as the deadline approached, the original deadline or the extensions, they did make a request, either through Northwest Aluminum or through Marsh, which was doing it on instructions from Northwest Aluminum, for an extension of time. There are letters that were sent after the prior time would have expired confirming an agreement to grant an extension of time. But in each situation, there was an agreement to grant an extension of time. And in each situation, they knew they had to ask for it. There was never an indication that Factory Mutual was waiving the suit limitations provision. There was never an indication that they didn't need to ask. And in fact, they continued to ask. What does it mean when they send a letter on the date of the deadline that says we look forward to resolving the matters in the near future? The letter that was sent... The letter Judge Clifton referred to. Each of those... You know, we have 30 days to resolve both. What does that mean? The original letter on the March 15th deadline refers to the fact that Factory Mutual is still willing to try to resolve the claim that they had in front of them, the original $6 million claim, if you would provide the documentation we've been asking for since 1997 about this, provide the information we have requested, and we will take a look at it. Well, why couldn't a reasonable person believe, then, that they had time to pursue that and didn't have to sue on that day? Well, first of all, they didn't... The letter was mailed on the 15th. Right, it confirmed the conversation of the 28th. Correct, but there's nothing... There was no written conversation from January 31 of 2001 through March 15 that discussed the suit limitation deadline. There was no representation by Factory Mutual that they didn't need to continue to comply. They had been given written notice that the deadline would expire on March 15th, and they knew and understood that that deadline mattered. The record establishes that what happened was the person at Marsh, the broker, who normally handled making the request, contacted Northwest Aluminum and said, do you want me to keep requesting extensions of time? He did not get a response from Northwest Aluminum. He did not follow up with Northwest Aluminum and did not request an extension. And nobody requested anything further from Factory Mutual about the suit limitation provision until an email came from Marsh on April 25th, six weeks after the period had expired. And that email came on the initiative of the person from Marsh who said he was not acting on instructions from Northwest Aluminum. He was simply inquiring. Let me ask you to shift gears for a second. Suppose we were to disagree with you and decide that the judge should have denied the summary judgment on estoppel. Where do we go from here? Is there a trial then on the estoppel claim, whether Factory Mutual was reasonable in desisting filing the suit? What happens? There would have to be a resolution of that factual dispute, I assume, through a trial on that. But it's also important to recognize that that is not the only issue in this case. This does not go away if we lose on estoppel or even if Factory Mutual were to lose on equitable tolling if we ever got to that issue. There are numerous other defenses and argued issues raised both in the complaint and in the denial letter, and all of those things are still outstanding as to causation and evaluation of a loss and many other elements. This is not simply a case that involves a denial based on the suit limitation provision. This was just the potentially dispositive issue that everyone agreed would be addressed first. Judge King granted your summary judgment on estoppel. Was there a cross-motion for summary judgment as well, or was it just your summary judgment motion? I believe it was just our motion. It's also important to recognize, getting back to the question of how we got to where we are, the efforts that Factory Mutual repeatedly made to try to resolve this claim left them in a position of having to say, They're not giving us the information. We need to do something. Let's get together our experts, our aluminum expert, our accountant, and try to put together some information. Factory Mutual did that, had a meeting with Northwest Aluminum on February 28th, which was 15 days before the suit limitation period would have expired, and said, Here's what we have. It is correct that Factory Mutual understood that Northwest Aluminum wanted time to respond. What Northwest Aluminum requested was that they show the material to their technical people and the record indicates that the understanding was that they would get back to them within two weeks. It was very clear to Northwest Aluminum at that point that Factory Mutual was disputing a major portion of their claim, which was this question about the effect on the pot life. Factory Mutual had made clear that they felt there was no merit to this part of the claim, and Northwest Aluminum knew that there was an actual valid dispute about the nature of their claim. Brett Wilcox, the CEO of Northwest Aluminum, is asked, Why didn't you file suit at that point? And he says, I made a business decision. I don't believe it's appropriate in a business world to sue somebody if you think you can still negotiate. That simply does not establish that they were lulled into a false sense of believing that Factory Mutual would not enforce the suit limitations provision. Everything Factory Mutual had done indicated that they were not waiving their rights. It was made clear to them. Their broker warned them that you guys are on thin ice here. It's getting harder and harder to get Factory Mutual to agree to extensions. We've got to provide the information. We've got to get this moving. We've got to keep an eye on the suit limitations provision. And they simply dropped the ball. They're turning to Factory Mutual after the fact to try to backdoor it and say, Well, let's look at maybe why we didn't do it. They admit in the request for admissions and in the request for productions, they say Factory Mutual did not make any false statements. Factory Mutual did not give us anything that indicated they would not enforce the suit limitation provision, that they would waive provisions of the policy. They did not do anything to interfere with our ability to file a lawsuit before the suit limitations period with its extension. And there simply is nothing on which to establish under the existing Oregon case law, the Johnson v. Kintner case and the Herman case, that would support any issue of fact here in a situation where they were notified, as in the Herman case, that the suit limitation period would be enforced, where there were discussions both before and after the deadline. In the Johnson v. Kintner case, the court said there's no reason to believe that you're going to resolve this case when you're $100,000 apart. In this case, we're $6 million apart. There's Oregon case law that says even if you agree to have meetings after the suit limitation period expires, that's not sufficient to justify simply ignoring the contractual requirement. So when is the claimant supposed to know when he's supposed to file? I mean, if there's a problem filing too early and there's a problem filing too late, when should he file? Well, first of all, there are several options. They could have filed soon. They could have requested another extension. They could have requested a tolling agreement that would have put the whole thing off. They could have done any number of things to try to protect their rights. I disagree with their position that it would have been filing too soon. There was a live dispute here. They had filed a claim. Factory Mutual had done what it could to investigate the claim based on the limited information provided to Factory Mutual. Factory Mutual made clear that it disagreed with their analysis. They knew that they had a live dispute here. There's nothing in Oregon law that would have precluded them from filing a lawsuit at that point, claiming either seeking declaratory relief or claiming breach of contract for failure to pay the claim. It simply would not have been a suit that was too premature or barred. But, again, at a minimum, they could have requested a further extension or done something to try to protect their interests. They did nothing. Thank you. Thank you. Thank you, Your Honors. I'll try to be brief. I want to start with the Oregon statute. There is, in fact, as Mr. Lear pointed out, an Oregon statute that carefully identifies the types of conduct, such as negotiating, that don't give rise to estoppel. But what we see when we read the cases, the Liddon, Mahler, and the Kimball cases, is that when an insurance company steps over that line, when an insurance company does more than just merely negotiate, that's enough to establish estoppel. Now, although Ciaccio and Shea were not decided under Oregon law, they espouse this same doctrine. They say that mere negotiations are not enough. But where an insurance company goes beyond that, such as soliciting information, that's enough. And that brings us to this February 28th meeting, which, candidly, is the crux, I think, of the estoppel argument. At this point, contrary to what Mr. Lear has said about Northwest Aluminum being the cause of the delay, Factor Mutual has now been sitting on Northwest Aluminum's claim for over a year. And they've waited, coincidentally, I suppose, until two weeks before this last limitation of supervision extension is about to expire. And they solicit their customer. They solicit their policyholder to respond. And that's what we see in the Ciaccio and Shea cases. And they don't deny the claim. We have testimony from one of their own witnesses saying, did you deny or grant the claim as of that date? He said, neither. And they make it very clear that we are open to persuasion. In fact, they say, you've got to respond. So there is no right claim as of that point. And in the letter of March 15th, there wasn't just a letter on March 15th. There was a phone call as well. And that March 15th letter confirms that phone call. So coincidentally, I guess, again, we have Factor Mutual calling Northwest Aluminum on that very day to make sure that they're still reviewing the accounting issues. Something is happening here, and it's not just negotiating. Now, Mr. Lear made the point that there is no proof of fraud. There isn't. We haven't alleged fraud. The cases make very clear, Lidden, Kimball, and Johnson, that proof of fraud is not enough. In fact, there doesn't even need to be intent to mislead. All that there has to be is conduct that lulls a policyholder into believing the claim will be resolved amicably. Now, Ms. Lear also pointed out that although as after March 15th, Northwest Aluminum couldn't have filed a claim, or couldn't have filed a lawsuit, they could still make a claim. The problem with that argument is that it, in a sense, confirms what we've been saying all along. They couldn't file a lawsuit to enforce their claim. And when we look at the letter, Ms. Lear pointed out there are a lot of issues in this case, but when we look at the letter that denies the claim, it doesn't say, first and foremost, we've carefully reviewed your claim and we find it without merit. It says, you can't sue us, so we're not going to pay your claim. And this, of course, is after this very long history of soliciting its customer to respond, of making it clear through its conduct that this claim would be resolved on the merits. And at bottom, I think, there's also a policy issue here, which is this notion of premature lawsuits. The Court does not need to reach that issue, because as of February 28th and March 15th, the conduct itself was sufficient to give rise to estoppel. But what we've also pointed out is that not only had Factory Mutual lulled this policyholder into believing that no claim was necessary, we also believe that no claim could have been filed. And that's a policy issue. Should this Court encourage or require policyholders to file premature lawsuits? That argument just loses me, I guess. You make a claim and they don't pay it. Under your theory, you could never file a lawsuit until you get a formal denial, right? The insurance company could immunize itself from suit simply by never sending a denial. That's right, and that's exactly why the courts in the equitable tolling context have adopted that doctrine, to prevent that from happening. I mean, the tolling would extend the time. You're saying the claim would never even be right because you haven't gotten a formal declination of the claim. That can't be the rule. I mean, the obligation of the insurance company is to pay the claim, and they either pay it or they don't pay it. It's not to send you a note. And if they don't pay it, you have your contractual right to sue. What I'm saying is that if they don't pay it, and if they lull their policyholder into believing that no lawsuit is necessary, then there is stop. Okay. And I'm sorry, maybe I'm splitting hairs here. You're not splitting hairs. You're not answering Dick's question, which is, under your theory, if the insurance company simply ignores you for the rest of your life, you can never sue. Is that right? If the insurance company were to ignore the policyholder for the rest of its life, the policyholder, I think, would have to sue. Absolutely. And how could he if there had been no denial? Well, that's the problem, is that the insurance company would come back and say that it was premature. But I do want to make, and I'm sorry I'm out of time, but I do want to make one point, which is this. Our estoppel argument does not turn on whether or not Northwest Aluminum had a legal right to sue as of March 15th. The argument that does turn on that is our request that this court decide the estoppel issue as a matter of law in Northwest Aluminum's favor. If the court isn't convinced that Northwest Aluminum's suit would have been subject to dismissal on prematurity grounds, then it shouldn't adopt our argument that the estoppel issue should be decided in Northwest Aluminum's favor as a matter of law. But that says nothing about the other argument, which is the crux of this appeal, which is estoppel. And that's based on the extensions, the February 28th meeting. Thank you. Thank you, Your Honors. State case argument will be submitted. Final case of the morning is Oregon Metallurgical Corporation versus Burlington Northern and Santa Fe Railway Company. Thank you.
judges: Reinhardt, Silverman, Clifton